We have just one case on the docket this morning, and that's cause number 23-20276, United States of America v. Paolo George da Costa. Is the appellant ready to proceed? You may. Good morning, your honors. May it please the court, Paul Crane on behalf of the United States. This is the second time the government has appealed the district court's dismissal of the indictment with prejudice and suppression of statements in this prosecution. And like with the first appeal, the government is asking this court to reverse both sets of rulings. This time around, the dismissal of the indictment was based on speedy trial grounds, and in particular the Speedy Trial Act, Speedy Trial Clause, and Rule 48. Unless the court prefers otherwise, I plan to begin with the Speedy Trial Act, and in particular what I'm calling the November Continuance Order. As the parties agree, the first set of errors identified by the government involved the failure of the district court to properly exclude time based on pending motions or motions that were under advisement. That is common ground. As a result, whether or not there was a Speedy Trial Act violation rises or falls on whether or not the November Continuance Order and Ends of Justice Continuance Order issued on November 21 successfully paused the SDA clock. The government submits that it did. The order complied with every single requirement of the Speedy Trial Act. The order specifically found that the ends of justice served by granting a continuance outweigh the best interest of the public as well as the defendant to a speedy trial as required by Subsection H7A. The order specifically identified three separate bases why a continuance was appropriate. There was more time needed to conduct discovery, more time needed to prepare pretrial motions, and more time needed to prepare for trial. As required . . . Do you not dispute that it was issued in error? I'm sorry, Your Honor? Do you not dispute that it was issued in error? We do dispute that it was issued in error. We do not agree with that proposition, Your Honor. We think that where the error took place is 19 months later when the district court retroactively rescinded the order and said that the order was presumptuous, and there is simply no record basis to support that conclusion. But the November order references a motion that was never filed. That's correct. So the November order does say the motion for continuance is therefore granted. And neither party at that time had filed the motion, and so that sentence is incorrect. But everything else in that order, located at page 425 of the record, we submit is accurate and entirely consistent with the record. And the mere inclusion of that single sentence is not a basis to believe that this order couldn't successfully pause the Speedy Trial Act clock. Everything else listed in the order follows the requirements of the Speedy Trial Act. It sets forth its reasons in writing on the record, and each of those reasons are amply supported by the record. For example, the first reason, more time is needed to conduct discovery. As of August 2021, the government had produced about 3.3 million pages of discovery. That's available on page 249 of the record. Come December, more than 4 million additional pages had been provided. And then come February the following year, one of the main pretrial motions filed by my friend on the other side was asking for even more discovery. The notion that more time was needed to conduct discovery is amply supported by the record. So is the additional basis set forth in the order that more time was necessary to prepare pretrial motions. At the time that the November order was issued, a handful of motions, not many, had already been filed in this prosecution. Five days after, the district court granted the motion to dismiss in a co-defendant's case, Refloy, which was one of the cases that was consolidated during the first appeal. And then 107 days later, the defendant filed four separate pretrial motions raising a number of novel issues of first impression in this circuit. So the notion that more time was needed to prepare pretrial motions is borne out by the record. To the extent the court or my friend on the other side is suggesting that because it was issued sua sponte, for some reason that makes it invalid, is directly contrary to the Speedy Trial Act itself, which specifically says, any period of delay resulting from a continuance granted by any judge on his own motion. So judges can, of course, issue ends of justice continuances based on their own motion. It doesn't need to be based on the motion of either party. So the fact that the order here was done sua sponte doesn't mean it's subject to any additional sorts of requirements. The finding 19 months later by the district court that it was either inappropriate or unjustified has no record basis. To the extent the district court was suggesting that it had second thoughts or a change of heart, while that might otherwise, if the error, his own perceived error had been discovered earlier permissible, it cannot lead to the basis of retroactively rescinding an otherwise valid order. If that were the case, every single ends of justice order would be subject to that retroactive rescission. And if that were the case, the government would not be able to rely, or for that matter, court or the defendant, on any ends of justice order, because it could at any moment in time later on say, never mind, I had second thoughts, and the clock was never actually in fact paused. And that just can't be how the Speedy Trial Act process works. Unless the court has any other questions about the effectiveness of the November order, I'm not sure. Well, did the district court make any on-the-record finding that the case was complex? The court did not specify or use the word complex. I think the record amply supports that it is. It is a multinational, international, to conspiracies, briberies, foreign evidence. Be that as it may, the court did, in the November continuance order, specifically identify two separate bases that are set forth in section H7B, specifically Romanet I, that failure to grant a continuance would result in a miscarriage of justice, and Romanet IV, where whether failure to grant such a continuance taken as a whole, even if not so unusual or complex to fall within Romanet II, would deny reasonable time necessary for effective preparation. So both those grounds, even though the court did not specifically invoke Romanet II under 3161H7B, it did invoke in the order I and IV, and that's perfectly permissible. Well, the government first reviewed the documents under SEPA in December of 21. That's correct, Your Honor. Why did the government wait until February of 22 to raise the issue? And I appreciate that question, Your Honor, and I want to be both as forthcoming as I can while also cautious about the classified nature of some of that information. What I can represent to this court is that after December 1st, the trial team was trying to determine first, is the information potentially disclosable, which it ultimately determined that it was, and separately, if so, is there a non-classified basis on which the information might be available to avoid needing to invoke the entire SEPA process? That said, the findings based on any sort of bad faith or intentional delay, with respect, have absolutely no basis in the record. The government prosecution team was acting diligently, and unfortunately, classified information in the SEPA process does take some amount of time. But even if the court disagrees about the impact of the March Continuance Order, either way, if the November Continuance Order did pause the clock, as we are arguing, there could be no Speedy Trial Act violation. Well, if the classified documents were not exculpatory or relevant to murderous defense, why would they be considered Brady or Giglio material? Again, I want to be as forthcoming but also cautious in what I say as it relates to the information itself. What I hope is responsive to your Honor's question is that because the District Court ultimately found and the government has argued that the information is not relevant or helpful to the defense is different than whether or not it might have been disclosable. So under the SEPA process, if there is potentially disclosable information that is otherwise classified, the government invokes the SEPA process as it did in its Section 2 notice on February 27th. It then presented that information in camera and ex parte to the district judge who had the opportunity to review that information as does this court. Doing a balancing test under the SEPA process determined that it was permissible for the not because it might have otherwise been disclosable but because in the balancing test once the SEPA process is invoked. And so, it would not be an accurate description to say that there was no basis for the information being potentially disclosable. Rather, because it was potentially disclosable, the government wanted the District Court to be able to look at it and give its blessing to withholding from disclosure under SEPA as the SEPA process is supposed to work. And the SEPA process worked as designed here. If the panel disagrees with you on the November order, what would be the benefit of even considering the March order? Well, if the panel disagrees with us on the November continuance order, we acknowledge there would be a Speedy Trial Act violation. But the consideration of the March order still might be relevant on whether it should have been dismissed with or without prejudice. The government's contention is that the main real area of dispute between the parties on whether it should have been with or without prejudice is that bad faith, purposeful, strategic advantage, which again, there is no basis in the record for that. So, if the court disagreed with us on the November continuance order, which of course we hope you do not, that still considering that for purposes of the with or without, and if the court agrees with us and disagrees that there was a bad, any sort of bad faith, we think that would counsel strongly in favor of it being, having been dismissed without prejudice as opposed to with prejudice. The additional potential basis where you still might need to consider that is in the context of the Speedy Trial Clause determination. You know, our position is there was no Speedy Trial Act violation, and then as a result, there almost certainly was not a Speedy Trial Clause. But either way, this court needs to go through the four factors in Barker. And again, I think the main area of contention between the parties at the end of the day is if there was purposeful bad faith, then that would weigh heavily against the government on the second Barker factor about reason for the delay. If there is no, if the court disagrees with that bad faith finding, then that reason for delay, second Barker factor, I think weighs against murder, and certainly does not weigh against the government, because even accepting the bad faith, that's only four out of the 49 months. But removing that, there's really no basis for finding a Speedy Trial Clause violation either. Unless the court has questions about the Speedy Trial issues, I wanted to briefly talk about the involuntariness conclusion. So the district court suppressed the same statements that were issued on the first appeal, which this court had said, Mr. Murdoch was not in custody for purposes of Miranda. This time around, the court said that the statements were made involuntarily for a lot of the same reasons this court already found, that the defendant was not in custody for purposes of Miranda. We submit their statements were also not done, were not involuntary under the Fifth Amendment. He had his counsel present the entire time. Counsel participated during the interview, was able to review the notes afterwards. It was done in a conference room, door was open, no suggestion of threats. And most critically here, based on the finding by the district court and submissions from my friend on the other side, there was no bait and switch, there was no lying deception by any of the government agents trying to suggest that nothing that Mr. Murdoch could say would ever be used against him in U.S. proceedings. That is akin to basically saying he should have had Miranda warnings, which again, because he was not in custody, that was not required. And so for all of those reasons, we ask this court to also reverse, in addition to the immediate trial dismissal, the involuntariness finding and the suppression of statements. Unless the court has any other questions, I'll reserve the rest of my time for rebuttal. All right. Thank you, counsel. Thank you, Your Honor. Mr. Lake? Yes, Your Honor. You may proceed. Thank you, Your Honor. And may it please the Court, I represent Paolo Murta, who made his initial appearance in this case twenty-seven months ago, in July of 2021. And for those twenty-seven months, he has aggressively sought a speedy trial, to use the district court's language. During those twenty-seven months, there's not been a single time that we've asked for a continual. And many times, we've opposed government requests to toll the Speedy Trial Act. Yet, nevertheless, there's still been no trial twenty-seven months down the road. And during those twenty-seven months, Mr. Murta spent the first eight in pretrial incarceration, where he suffered permanent harm to his hearing because of substandard, inadequate medical care. And then even after he was released on bond, after those eight months, he's continued to be restricted to the United States. He's complying with his bond conditions, which prohibit him from returning to Portugal, where he's from, where he could see his family, where he has authorization to work, and where he has health insurance, where he'd be able to receive surgery. So based on all of that, the Court was correct to dismiss this case with prejudice. There was a speedy trial violation, and there was prejudice. And I'd like to— Is that the sort of prejudice that Barker focuses on? I'm sorry, Your Honor? Is that the sort of prejudice that Barker focuses on, or does it more so focus on his ability to present a defense? I think that they're all relevant, Your Honor. There's certainly some language that says the trial defense may be the most important, but there's other precedent that suggests that just the individual prejudice is also a standalone factor. So has his ability to present a defense been prejudiced, and if so, how? I believe so, but the District Court didn't address that, so the Court's opinion doesn't address that. In our view, yes, and the harm is that when we were ready for trial in March of 2022, at the March 3rd hearing, we were 18 days away from trial, and the government, we agree with the District Court, was not ready for that trial. And by their delay, the delay we agree with the District Court, was improper. They became ready a year later. And I guess the way we see that, Your Honor, is that after remand, talking about this year, the government, for the first time, endorsed six new expert witnesses that we had never seen before. For the first time, it asked to depose an overseas witness that it called essential. It hadn't done that last year. It gave us an exhibit list for the first time, a witness list for the first time.  So, last year, the government was not ready, and that's why they sought delay. That was the District Court's finding. And so, the delay benefited them, so it's not a direct harm to our trial. We were ready, but it was a benefit to the government, which is a relative harm to our position. I do think that the best path forward would be for this Court to affirm on the Speedy Trial Act ground, in which case the Court doesn't need to reach the other issues raised by the government. And I'd be happy to answer questions on any of those, but I plan to focus on just the Speedy Trial Act issues with my time. Can you tell me whether your client is indicted by Portugal for any of these? Yes, Your Honor. Well, I will say first, it's not in the record, other than Judge Hoyt's reference that . . . Well, what is that based on? His record, his conclusion that your client faces charges in Portugal. When the case first began, there was testimony from government agents at the detention hearing that there was a Portuguese investigation, and I assume that it's from that, and it's possible that there were references to that investigation growing into charges, but I'm not aware of that in the record. But there's no charges have been made by Portugal? Actually they have. I can't point to a place in the record that shows that, but I can say outside of the record there have. Mr. Murta has the same Portuguese counsel he's had throughout, who we've coordinated with for years, and I . . . so outside of the record, yes, he has, but to be candid, I can't point to that in the record. To begin with the November order, I think there's two factors I need to address. One is that the order itself was insufficient, and then the second is the question of remedy, and on the insufficiency of the order, to prevail, the government would need to convince this court that the district court's own statements are false, and I say that because when we look at the court's dismissal order, particularly page 1831, it's incredibly clear. What it is saying is, and I'll use some of the court's language, that the November order was presumptuous. It used form exclusion language, and no basis had been presented to the court then or since, so the court had no indication of what motions the parties would file, and Your Honor pointed to the line in the November order that says it's granting a motion for a continuance. Two paragraphs earlier, the same order, the November order, begins a sentence with, based on these representations, the court makes the findings, but then on page 1821 of the record, it's in the court's dismissal order, the court says that, in fact, neither Murta nor the government had made any such representations at the time. The key question this court has said, and Bieganowski in other cases, is what reasons actually motivated, that's the quote from Bieganowski, actually motivated the court to grant the order? Not what can the government point to that it calls prescient, or foreseeing future issues, but what actually motivated it, and the district court was here clear that it was its own error and misunderstanding, and it was presumptuous, so to give context for that, the government didn't ... But I guess, one, we agree that a court could sui sponte, issue an order for a continuance. Yes. So, what's presumptuous, I mean, the judge's finding was that that order was presumptuous, what were the presumptions? I believe what the court's referring to is it was making assumptions about what the parties might need without hearing from the parties themselves, and so in the ordinary run-of-the-mill case where this form language, to use the court's phrase, would make sense, a party would have filed a motion representing that it needs more time. Discovery is voluminous to take the government's point, we need more time for motions. That didn't happen, so the court is suggesting it was presumptuous and just entered the order on its own. But a significant amount of discovery occurred post-issuance of that order, within a few months of the order being issued, all right? No, I think what the government is doing is it's citing to an April 2023 pleading where it referenced the state of discovery in December after the order. Most of ... It's not in the record when that all happened, right? So it's pointing out the fact and saying, by December, there was 7 million. Matter of fact, by November, most of it was there. When the November order was entered, we were one week from the motions deadline. Three other times in this case, we filed our motions on the deadline. We were ready to do the same that November, but then the court entered its order, postponing all the deadlines, and so we waited and filed on the deadline again in February. So there wasn't a need, there was certainly not in the record a need for more time to conduct discovery, and Mr. Mertz had been on the record asking for a speedy trial. I think based on how the government has framed its argument, particularly in the reply brief, I'd point the case to one case that I think is very important. It's this court's opinion in Burrell, a 2011 case. Both parties have cited it, but the facts of that case are that the government had filed in the district court a motion to continue, a pretty detailed motion explaining that one of its essential witnesses was unavailable, saying why they were unavailable, why they were essential, and asking for delay. The district court entered a written order granting that motion based on those representations and citing the ends of justice. Then the defendant filed a motion to dismiss that was denied, and so the case went through trial, sentencing, and then an appeal to this court. So this court, more than two years later after the order was entered, reversed and said the district court's continuance order was insufficient. The mere fact that even the government had asserted these facts was not enough to prove that the record supported the delay . . . Well, in that regard, can you point to any findings by the district court of how Murtah's defense might have been impaired by the November 21 continuance? Trial defense, no. I don't believe he reached that issue. For the reasons I said, I do believe trial defense was impacted, but I don't think the court reached . . . How about as to the March 22 continuance? I think both would be similar in that the government was not ready and benefited from the delay where Mr. Murtah was ready. Thank you. You're welcome. So I think Burrell is important because there, there was more than there is here. There was a government assertion based on detailed allegations that it needed more time and this court said even that's not enough. So here, to make sure the context is clear, there also was an August order that was entered sua sponte, and in August of 2021, there was a pretrial conference where we stood in front of the judge and the judge said that he intended to continue the case. The government doesn't defend that continuance order, it didn't cite the Speedy Trial Act, it didn't explain the reason for delay. But the important point is after that hearing, that was on August 23rd, I believe, there was no other hearing. The parties didn't file any updates about discovery, about their need for more time or the status of trial preparations. So from when the court delayed in August through its November order, there was no record. No facts suggested that the party needed more time. And that's where our citations to Jones and Blackwell become important, is this court has said that a district court must consider the party's diligence, and as the court recognized, it had no record from which to evaluate the party's diligence. So I do want to move on to the question of remedy, unless the court has other questions on the facial sufficiency. On the remedy, the government now says that this is an unprecedented step or that it's impermissible for a district court to take this action. And it never made that argument below. The government disagrees and it cites to places where it certainly said the November order was valid. As it does now, it said there was sufficient reason for the court to grant the order. But should find it valid is different than cannot find it invalid. The government now makes an argument that it is impermissible, a court cannot take this step. It never made that argument below. Even if it had, though, that argument isn't supported by the law. First, I would say the delay here that the government points to about 19 months is not attributable to Mr. Murtaugh. On the government's account, we filed our motion to dismiss on the same day the violation occurred. We didn't wait. We didn't sandbag. We didn't wait until the day of trial. We filed on the motion deadline when the violation occurred. But more importantly, this court frequently vacates because it finds ends of justice orders insufficient. So, we cited, I think, at least four cases where this has happened, Willis, Blackwell, Jones, and Burrell. In all four of those cases, there was a continuance order in the district court. Then there was a trial. Then there was a sentencing. And then, more than two years later in all four cases, this court found the original order invalid and ineffective and remanded for dismissal. If this court is required to do it many years later, there's no reason, and the government doesn't cite authority, to say the district court can't save the time and resources of recognizing its own error and taking an appropriate step. Here, the judge admirably recognized that he had made some errors and the government had made some errors and dismissed. The government now is able to appeal and ask this court to evaluate that decision. The government's position is this should have been a trial case. We should have had to go through trial and sentencing and then years later be in front of your honors, where your honors would be looking at doing the same thing. That's not the law. And if we could point to the Supreme Court's language, especially in Taylor, it uses strong language that dismissal is mandatory if the orders are ineffective. There is no question of other remedies the way the government suggests. It cites out-of-circuit cases from the early 1980s that came before Taylor and Zedner where the court was very clear, dismissal is mandatory. The other factors might come into the prejudice or without prejudice decision, but dismissal is mandatory. I also want to respond to what the government said in its briefing, that our silence somehow should be held against us, which is a form of a waiver argument. It's saying because we did not do certain things, we can now no longer raise a claim. That's not the law. The Supreme Court in Zedner, this court in Blackwell, the Third Circuit in Reese have consistently said that the defendant has no duty to bring himself to trial. The government and the court has that duty. Mr. Murtaugh did what 3162 says, which is to spot a violation. In Zedner, Justice Alito writing for the court said, the Congress has chosen to give that duty to the defendant, spot a violation and raise it, which is what we did. There's no merit to the claim that by somehow waiting until there was a violation of our rights, we've waived a Speedy Trial Act claim, that's contrary to binding law. I do, if the court has no questions on that, I'd like to move to the March order. I would agree with opposing counsel that the court does need to consider the March order because it's relevant to with and without prejudice. Even if the court finds that the November order was invalid and there's a violation, I think the March order is important. In this case, first, the government never argued below that the March order should be valid. To give the court the timing that is important here, the government for months opposed telling us or the court when it had first learned of the SEPA information. It said this is all classified, we can't tell you, but once the court ordered disclosure, the government promptly complied. May 1st of this year is when we learned these dates, so May 1st. Two days later, May 3rd, is when we then filed a supplement to our Speedy Trial Argument saying based on these dates, the March order is invalid. So May 3rd is when we first raised that claim under the Speedy Trial Act. The government says it preserved an argument, but this is in pages 11 and 12 of their reply brief. They cite two pages of the record, that's 1509 and 1516. Those point to a pleading the government filed in April, before Mr. Murta knew about the SEPA dates, before he had argued the March order was invalid. So not only is it citing something before we raised the argument, but those two pages, 1509 and 1516, are in the factual statement section of one of its pleadings. It's not even in the argument section. There's no merit to the government's new claim that it somehow preserved this argument. It waited in silence from when we filed in May 3rd and said the March order should be invalid, till May 17 when the court ordered it dismissed. The government fully forfeited this argument below, and now claims otherwise by pointing to something that predated our argument in a factual section. So I would ask the court to find that it's been fully forfeited and then waive because they don't argue plain error. But even if the court reaches the merits, even on appeal, in its opening brief, it didn't even contest bad faith. If you look at page 33 of their opening brief, they're very clear what they do challenge. It's diligence. Now in the reply brief, the government says the bad faith finding is derivative of diligence. It says by challenging diligence, it also challenged the derivative bad faith finding. But nothing about bad faith is derivative of a lack of diligence. Lack of diligence is akin to negligence. I should have done something and I didn't. Bad faith is intentional, purposeful. It's not a subset of lack of diligence. When the government argued lack of diligence in its opening brief, we responded. That's not a bad faith argument. It now claims that it preserved. And we see this in the Supreme Court's decision in Taylor as well. So Taylor is the 1988 case dealing with when to dismiss with or without prejudice. And in the district court, the district court had dismissed with prejudice in Taylor because it found the government had acted what it called lackadaisical, lackadaisical effort. When it reached the Supreme Court, the Supreme Court held despite the lackadaisical finding, that's not enough. This should be without prejudice. It noted in Taylor, the outcome would have been different had the district court made a finding of bad faith. There is no merit to the government's claim that diligence and bad faith are the same. Here, we think the district court was exactly right, that there was bad faith. And I want to briefly with my remaining time address the government's claim that somehow this SEPA term of art, relevant and helpful, means nothing about Giglio. And first, we agree. Relevant and helpful is a SEPA term. That is, I think it started with the D.C. Circuit in Eunice, effectively what the courts have done is bring Roviero for informants, that body of law, into the SEPA context. So relevant and helpful is used there. But if you read Eunice, which is the case the government relies on, it explains that the word relevant there is Rule of Evidence 401. It calls it the low hurdle of relevance from Rule 401. It's common, run-of-the-mill relevance. That's the first threshold for this question. So when the government asserted below and continues to this day to say this information is not relevant, this court has described Giglio as expanding Brady to include evidence relevant to witness credibility. If evidence isn't relevant, it's not Giglio information. The bad faith is there's a nonexistent discovery matter, as the court said. We never asked for this information. We never sought it. And the government didn't plan to disclose it. They used it as a bad faith reason to delay. So I see my time is up, but I would ask the court to affirm the district court. Thank you, counsel. Roboto. Thank you, Your Honor. Just subject to the court's questions, two main points I wanted to focus on briefly. One is, again, just about the November continuance order. So just to make sure that we're perfectly clear, we are contesting whether or not it validly paused the STA clock. We argue that it did. Unlike my friend on the other side, we think Barrell stands for a different proposition, with which we completely agree with, which is that the continuance order there was based on the reason specifically prohibited by subsection H7C, which says that continuances cannot be based upon a few things, including lack of diligent preparation or failure to obtain available witness on the part of the attorney for the government. None of the issues in H7C, the prohibited substantive reasons for having an ends of justice continuance, are at issue here. The order specifically talks about discovery, pre-trial motions, and preparing for trial. In addition, we agree that if the November order was invalid, if it didn't have record findings, if it looked like the August order, which we are not claiming paused the STA clock, then that would be the end of the matter, but that's not this case. If you look at the November order, page 425 of the record, it meets every single requirement of the STA. Yes, it was issued sua sponte, but that does not in and of itself preclude its ability to pause the clock, and if an order that looks like this can then, 19 months later, be told actually it never paused the clock, then every other order that looks like this could be subject to that same possibility. The last point is about the March continuance order and whether we challenge diligence only or bad faith. In page 39 and 45 of the opening brief, we also talk about why there was no bad faith. Our focus in the section about diligence is because under the Speedy Trial Act and as part of the district court's finding, it was that lack of diligence that was the basis for saying the March order did not pause the clock. The bad faith, purposeful, strategic advantage behavior was most relevant in the context of with or without prejudice and the Speedy Trial Clause, and at that point of our opening brief and again in reply is where we challenge those findings, and we continue to challenge those findings, and there is simply no basis in the record to believe that the government was using this, as the district court suggested, as some sort of pretext that it would risk the potential disclosure of national security information in a case where it's never otherwise asked for a continuance. My friend on the other side is correct that they have not asked for a continuance. We've only asked for one once. The first two continuances were done by the court sua sponte, the third was at our request about SEPA to try and comply with our discovery and SEPA obligations, and the last two trial dates were canceled by the dismissals of the indictments. We ask that this court do the same as it did last time, which is reverse the dismissal of the indictment and reverse the suppression rulings. Thank you, Your Honors. Thank you, Counsel. All right. That concludes the matters on today's docket. We are—the court will take this matter under advisement and we are adjourned.